IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CORRECTIONAL SERGEANT JOHN DIX, a.k.a. "JOHN DIX, JR.," | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | NO. 15-532 |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA, POLICE OFFICER MICHAEL PALMER #2192, POLICE OFFICER BRANDON BRYANT #7165, DETECTIVE ALONZO DAWSON #0606, SGT. McGEEVER #413, BEST BUY IMPORTS, INC., MICHAEL REITANO, TONY POULOS, FAIR STOP AUTO, INC., and WILLIAM CLARK | : : : : : : : : : | |
| Defendants. | : | |

**FILED**

AUG - 3 2015

MICHAEL E. KUNZ, Clerk
By_____ Dep. Clerk

DuBois, J.                                                                          July 31, 2015

**M E M O R A N D U M**

I.      **INTRODUCTION**

This is a civil rights case in which plaintiff John Dix, Jr. alleges that the City of

Philadelphia, Officer Palmer, Officer Bryant, Detective Dawson, and/or Sergeant McGeever

(collectively "City defendants") falsely arrested and prosecuted him without probable cause,

based on fabricated videotape evidence.[1] Presently before the Court is City defendants' Motion

for Judgment on the Pleadings, seeking dismissal of all Counts against City defendants.[2]  For the

---

[1] The Complaint also asserts claims against Lieutenant Robert Zaffino. As Lt. Zaffino is not identified in the case caption and plaintiff does not make any specific factual allegations against him, the Court strikes the claims against him from the Complaint.

[2] Plaintiff asserts all claims against City defendants, except for his fifth claim, which alleges that defendants Best Buy Imports, Inc., Reitano, Poulos, Fair Stop Auto, Inc. and Clark (collectively "non-City defendants") are liable to plaintiff for the torts of false arrest, false imprisonment,

following reasons, City defendants' Motion is granted in part and denied in part.

## II.   BACKGROUND[3]

In the Complaint, plaintiff, a correctional sergeant for the City of Philadelphia, alleges the following facts: Plaintiff and his wife, Catrina Dix, dropped off a motor vehicle at Best Buy Imports Incorporated ("Best Buy") for mechanical work. (Compl. ¶¶ 15-16.) "Defendants, Michael Reitano, Best Buy Incorporated, and/or Fair Stop Auto Stop made fraudulent repairs to plaintiff's vehicle that weren't requested or authorized by plaintiff."[4] (*Id.* ¶ 19.) Plaintiff attempted to address the fraudulent repairs by telephone with representatives of Best Buy and/or Fair Stop Auto, but they were "rude and unprofessional during said telephone call and hung up in the Plaintiff's ear." (*Id.* ¶ 20.) During one phone conversation, a representative from Best Buy and/or Fair Stop Auto informed plaintiff that he owed more money for an oil change for the vehicle, which plaintiff had not requested. (*Id.* ¶ 20.)

On January 5, 2013, plaintiff and his wife went to Best Buy to pick up the motor vehicle. (*Id.* ¶ 16.) Upon their arrival, plaintiff "extended remuneration" to Best Buy and attempted to call Best Buy's Frankford Avenue location to address the fraudulent repairs and unauthorized

---

malicious prosecution, intentional infliction of emotional distress, defamation, slander, libel, and assault under Pennsylvania state law.

[3] As required on a motion for judgment on the pleadings, the Court accepts all factual allegations as true and construes the Complaint in the light most favorable to plaintiff. *Burks v. City of Philadelphia*, 904 F. Supp. 421, 425 (E.D. Pa. 1995) (citing *Colburn v. Upper Darby Township*, 838 F.2d 663, 665–66 (3d Cir. 1988)).

[4] Plaintiff purchased the vehicle from Best Buy and/or Fair Stop Auto's 4060 Frankford Avenue location. (*Id.* ¶ 17.) The Complaint does not specify when plaintiff dropped off his vehicle or when the alleged fraudulent repairs occurred.

services. (*Id.* ¶ 21.) At that point, defendant Reitano, a manager at Best Buy, "began to express his displeasure at [plaintiff's] earlier phone call."[5] (*Id.* ¶ 22.) Plaintiff informed defendant Reitano that he did not have the "$300 plus dollars" to pay for the repairs that he did not authorize. (*Id.* ¶ 23.)

Defendant Reitano "became irrationally upset and aggravated," which caused plaintiff to be in fear of serious bodily injury. (*Id.* ¶ 24.) Defendant Reitano "continued to intensify his words and actions" by making "irrational, verbally abusive, disparaging and threatening remarks about correctional officers" and threatened plaintiff by "indicating…that he had friends and family who were police officers." (*Id.* ¶¶ 25-26.)  At some point during the parties' interaction, defendant Poulos,[6] a Best Buy salesman, "brush[ed] by [plaintiff], almost knocking [him] off his feet." (*Id.* ¶ 32.)

Shortly thereafter, defendant Reitano "ordered that Plaintiff be given the keys for his vehicle, and that the vehicle be brought from the service area." (*Id.* ¶ 33.) Plaintiff and his wife went outside to wait for their vehicle to be returned. (*Id.* ¶ 33.) Defendant Poulos, "still in an irrational and threatening verbal rage," threw the keys to plaintiff's vehicle to the ground and called plaintiff's wife a "bitch." (*Id.* ¶ 34.) Defendant Poulos then headbutted plaintiff and attempted to hit plaintiff with his fist. (*Id.* ¶ 35.)  Defendant Poulos' actions were "intended to and did in fact cause [plaintiff] to be in fear of serious bodily injury to himself and/or his wife." (*Id.* ¶ 36.)

---

[5] The Complaint does not provide any details of this phone conversation.

[6] Plaintiff spells defendant Poulos' name differently throughout the Complaint. *See, e.g.* Compl. ¶ 31 ("Paulos"). The Court uses the spelling that appears in the case caption.

In response to "[defendant Poulos'] actions and his attempt to punch [plaintiff]," plaintiff leaned back, pulled his shirt up to expose his firearm,[7] and aimed it toward defendant Poulos "in an attempt to defend himself and his wife from serious bodily injury and stop Defendant Poulos' assault." (*Id.* ¶ 37.) Defendant Poulos invited plaintiff to shoot him, but then ceased his threatening actions. (*Id.* ¶ 38.) Plaintiff's wife called 911, and plaintiff walked away to await the arrival of the police. (*Id.* ¶¶ 41-42.)

Shortly thereafter, three police cars arrived. (*Id.* ¶ 43.) One officer walked directly over to defendants Reitano and Poulos, began to laugh and shake their hands, and ignored plaintiff. (*Id.* ¶ 43.) Defendant Sergeant McGeever[8] "pulled up his police car next to plaintiff" and ordered him to place his hands on the car. (*Id.* ¶¶ 44-45.) Defendant McGeever lifted plaintiff's shirt, removed plaintiff's weapon, and placed it in his police vehicle. (*Id.* ¶¶ 45-46.) Plaintiff "took out his [identification]" and handed it to defendant McGeever. (*Id.* ¶ 47.) Without looking at it, defendant McGeever placed it in his police vehicle. (*Id.* ¶ 47.) Defendant McGeever then "left the area where [plaintiff] stood" and proceeded to shake hands with defendants Reitano and Poulos and laugh with them. (*Id.* ¶ 48.)

Defendants McGeever, Reitano, Poulos, and two other officers, believed to be defendants Palmer and Bryant, then walked into the dealership trailer, leaving one officer outside. (*Id.* ¶ 49.) After "remain[ing] in the trailer for a while," defendants exited the trailer. (*Id.* ¶ 51.) Defendant

---

[7] Plaintiff alleges that he was legally authorized to carry a concealed weapon in the City of Philadelphia. (*Id.* ¶ 39.)

[8] Plaintiff spells defendant McGeever's name differently throughout the Complaint. *See, e.g.* Compl. ¶ 44 ("McKeever"), Compl. ¶ 53 ("McGee"). The Court uses the spelling that appears in the case caption.

McGeever approached plaintiff and informed him that there was an audioless videotape of the incident inside the trailer and that "it 'looked like' [plaintiff] had headbutted Defendant Poulos in the video." (*Id.* ¶ 52.) According to plaintiff, defendant McGeever knew this statement to be false because there was no such videotape. (*Id.* ¶ 53.) Plaintiff requested to see the videotape, which Sergeant McGeever denied, and was subsequently ordered to get into the police "truck" to be transported to the 35th Police District. (*Id.* ¶¶ 55-56.)

Once plaintiff arrived at the District, he was processed and placed in a cell. (*Id.* ¶ 60.) Defendant Dawson was assigned to investigate the incident and spoke with plaintiff at the District. (*Id.* ¶ 62.) When plaintiff asked defendant Dawson if he had seen the videotape, defendant Dawson stated that he would not be able to see it until Tuesday, approximately three days later. (*Id.* ¶ 62.) Defendant Dawson also informed plaintiff "that he did not think [plaintiff] should be charged with anything, but was going to charge him anyway because he had been ordered by 'the sergeant' to do so." (*Id.* ¶ 64.)

Soon thereafter, plaintiff appeared before a hearing officer and was sent to Philadelphia Police Headquarters. (*Id.* ¶ 66.) Because plaintiff could not pay his bail immediately, he was transported to the Curran Fromhold Correctional Facility. (*Id.* ¶¶ 67-68.) Plaintiff was subsequently released on bail.[9] (*Id.* ¶ 72.)

Plaintiff was arrested on January 5, 2013 and charged with possession of a weapon, terroristic threats, simple assault, and reckless endangerment. (*Id.* ¶ 14; Compl, Ex. A, Municipal Court of Philadelphia County Docket.) The charges against plaintiff proceeded through the Philadelphia court system. (*Id.*) City defendants never produced the videotape, despite numerous

---

[9] The Complaint does not specify when plaintiff was released from custody.

5

requests from defense counsel and the Judge. (*Id.* ¶ 73.) At the May 13, 2013 trial, the officers

who allegedly viewed the videotape did not testify. (*Id.* ¶ 76.) Plaintiff was found not guilty of

all charges. (*Id.* ¶ 78.) However, his weapon was not returned. (*Id.* ¶¶ 76, 87.)

Plaintiff was suspended from his position with the Philadelphia Prison System due to his

arrest on January 5, 2013, and soon thereafter was sent a termination letter. (*Id.* ¶¶ 80-81.) At the

advice of his Union, plaintiff requested a leave of absence, which was denied. (*Id.* ¶ 82.) Plaintiff

was not authorized to return to work until June 6, 2013 and consequently lost wages, benefits,

and accrued time. (*Id.* ¶¶ 82-84.)

## III.   LEGAL STANDARD

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is

analyzed under the same standard as a motion to dismiss under Federal Rule of Civil Procedure

12(b)(6). *See Bangura v. City of Phila.*, 338 F. App'x 261, 264 (3d Cir. 2009) (citing *Turbe v.

Gov't of Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991)). Rule 12(b)(6) of the Federal Rules of

Civil Procedure provides that, in response to a pleading, a defense of "failure to state a claim

upon which relief can be granted" may be raised by motion to dismiss. To survive a motion to

dismiss, a civil plaintiff must allege facts that "'raise a right to relief above the speculative

level.'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atl. Corp. v.

Twombly*, 550 U.S. 544, 555 (2007)). A complaint must contain "sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). To satisfy the plausibility standard, a

plaintiff's allegations must show that defendant's liability is more than "a sheer possibility." *Id.*

"Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops

short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting

Twombly, 550 U.S. at 557).

In *Twombly*, the Supreme Court used a "two-pronged approach," which it later

formalized in *Iqbal*. *Iqbal*, 556 U.S. at 679; *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11

(3d Cir. 2009). Under this approach, a district court first identifies those factual allegations that

constitute nothing more than "legal conclusions" or "naked assertions." *Twombly*, 550 U.S. at

555, 557. Such allegations are "not entitled to the assumption of truth" and must be disregarded.

*Iqbal*, 556 U.S. at 679. The court then assesses "the 'nub' of the plaintiff['s] complaint — the

well-pleaded, nonconclusory factual allegation[s]" — to determine whether it states a plausible

claim for relief. *Id.*

## IV.    DISCUSSION

In the Complaint, plaintiff alleges the following claims against City defendants:

conversion (Count I), false arrest and malicious prosecution under the Fourth Amendment

(Count II), conspiracy (Count III), municipal liability (Count IV), state law equitable relief

(Count V), and suspension of employment with the City of Philadelphia in violation of the Due

Process Clause (Count VII). The Court addresses each of plaintiff's claims against City

defendants in turn.

### A.  Count I: Conversion under Pennsylvania Law

Plaintiff asserts that City defendants committed conversion by illegally confiscating

plaintiff's firearm and failing to return it after he was acquitted of all charges on May 13, 2013.

(Compl. ¶ 90.) City defendants argue that plaintiff's conversion claim fails because: 1) Officer

Palmer, Officer Bryant, and Detective Dawson did not take his firearm; 2) the officers that took

plaintiff's firearm had probable cause to arrest him, and thus had "lawful justification" to take his property; 3) the claim is time-barred; and 4) City defendants are immune from liability under Pennsylvania's Political Subdivision Tort Claims Act ("PSTCA"). The Court concludes that the City of Philadelphia and defendant officers in their official capacities are entitled to immunity under the PSTCA but that plaintiff sufficiently alleges a conversion claim against defendant officers named in their individual capacities.

### 1. Count I: Conversion Claim Against City of Philadelphia and Defendant Officers in Their Official Capacities

The PSTCA provides that Pennsylvania municipal agencies[10] and their officers acting in their official capacities are immune from liability for damages arising out of injuries to persons or property. 42 Pa. Cons. Stat. §§ 8541, 8545; *see also Milbourne v. Baker*, No. 11-1866-JD, 2012 WL 1889148, at *4-5 (DuBois, J.) (E.D. Pa. May 23, 2012) (treating a claim against municipal employees in their official capacities as claims against the City of Philadelphia). Conversion does not fall within § 8542's limited exceptions to this general grant of governmental immunity. 42 Pa. C.S.A. § 8542; *Min v. Morris*, 737 F.Supp.2d 332, 340 (E.D. Pa. 2010) (Restrepo, J.) (finding that a conversion claim does not fall within § 8542 exceptions); *see also Safa v. City of Philadelphia*, No. 13-5007, 2014 WL 2011487, at *8 (E.D. Pa. 2014) ("Given that conversion is an intentional tort, the [§ 8542] exceptions from immunity do not apply."). Thus, the Court concludes that the City of Philadelphia and defendant officers named in their official capacities are entitled to immunity from plaintiff's conversion claim under the PSTCA.

---

[10] The City of Philadelphia is a local agency within the ambit of the Political Subdivision Tort Claims Act. *See Fulginiti v. City of Philadelphia*, No. 08–1752, 2010 WL 2510369, at *3 (E.D. Pa. 2010).

### 2. Count I: Conversion Claim Against Defendant Officers in Their Individual Capacities

The PSTCA does not shield an employee from liability where his conduct constitutes a "crime, actual fraud, actual malice, or willful misconduct." *See* 42 Pa. Cons. Stat. § 8550; *Kuzel v. Krause*, 658 A.2d 856 (Pa. Commw. Ct. 1995). "The term 'willful misconduct' is synonymous with the term 'intentional tort.'" *Sanford v. Stiles*, 456 F.3d 298, 315 (3d Cir. 2006). Since plaintiff avers that defendant officers, acting in their individual capacities, committed the intentional tort of conversion, *Roman v. Swartz*, No. 1243-2012, 2013 WL 3982813, at *2 (Pa. Commw. Ct. 2013) ("Conversion is an intentional tort."), defendant officers named in their individual capacities are not immune from liability. *See Brown v. Muhlenberg Twp.*, 269 F.3d 205, 214 (3d Cir. 2001) (recognizing that plaintiff could sue public employee for conversion under § 8550). Thus, the Court concludes that defendant officers named in their individual capacities are not immune from liability for the conversion claim.

The Court further concludes that plaintiff sufficiently alleges a conversion claim against defendant officers in their individual capacities. Conversion is "an act of willful interference with a chattel, done without lawful justification, by which any person entitled thereto is deprived of use and possession." *Norriton E. Realty Corp. v. CentralPenn Nat'l Bank*, 435 Pa. 57, 254 A.2d 637, 638 (Pa. 1969) (citations omitted). An entity can commit conversion by "unreasonably withholding possession [of a chattel] from one who has the right to it." *Foster v. City of Philadelphia*, No. 12-5851, 2014 WL 5821278, at *26 (E.D. Pa. 2014) (citations omitted). In support of his conversion claim, plaintiff alleges that defendants Palmer, Bryant, Dawson, and McGeever took possession of his firearm and unreasonably withheld possession by failing to

return it. (Compl. ¶¶ 90-91.)  He also alleges that he had a right to his firearm after he was acquitted of all charges, as he was legally authorized to carry a concealed weapon in the City of Philadelphia. (*Id.* ¶¶ 90-91; 39.)

Finally, plaintiff's claim is not time-barred because the alleged conversion occurred on May 13, 2013, when defendant officers failed to return plaintiff's firearm after the Municipal Court of Philadelphia found him not guilty of all charges.[11] (*Id.* ¶¶ 90-91, 78.) As plaintiff filed his Complaint on February 2, 2015, the conversion claim falls within the applicable two-year statute of limitations. *See Kingston Coal Co. v. Felton Min. Co.*, 456 Pa. Super. 270, 278, 690 A.2d 284, 288 (1997) (stating that conversion has a two-year statute of limitations) (citing 42 Pa. C.S.A. § 5524(3)).

Thus, the Court denies City defendants' Motion to the extent it seeks dismissal of plaintiff's conversion claim against defendant officers in their individual capacities.

## B. Count II: False Arrest and Malicious Prosecution under the Fourth Amendment

In Count II, plaintiff brings two claims based on alleged violations of his Fourth Amendment rights under the U.S. Constitution: 1) false arrest, and 2) malicious prosecution. Plaintiff alleges that City defendants arrested and prosecuted him without probable cause based on fabricated evidence. (Plaintiff Memorandum of Law ("Pl. Mem.") 8.) The Court addresses each claim in turn.

---

[11] To the extent that plaintiff bases his conversion claim on City defendants' taking of plaintiff's firearm at the time of his arrest on January 5, 2013, the claim is time-barred. (Compl. ¶ 90.) Thus, the Court grants City defendants' Motion to the extent it seeks dismissal of plaintiff's claim that City defendants committed conversion by taking plaintiff's firearm on the day of his arrest.

### 1.  Count II: False Arrest

City defendants contend that the statute of limitations bars plaintiff's false arrest claim. The Court agrees.

A § 1983 false arrest claim is subject to a two-year limitations period. *See Milburn v. City of York*, No. 14-1651, 2015 WL 2240252, at *2 (3d Cir. 2015). "[T]he statute of limitations for a claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process...for example, [when] he is bound over by a magistrate or arraigned on charges." *Wallace*, 549 U.S. at 387-89; W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on Law of Torts § 11, p. 54, § 119, p. 888 (5th ed.1984) ("If there is a false arrest claim, damages for that claim cover the time of detention up until issuance of process or arraignment.")

Since plaintiff was arraigned on January 6, 2013, the statute of limitations expired on January 6, 2015. (Compl. Ex. A, Municipal Court of Philadelphia County Docket.) As plaintiff filed his Complaint on February 4, 2015, his false arrest claim is time-barred. Thus, City defendants' Motion is granted to the extent that it seeks dismissal of plaintiff's false arrest claim in Count II of the Complaint.

### 2.  Count II: Malicious Prosecution

Plaintiff alleges that City defendants prosecuted him without probable cause based on fabricated evidence. (Pl. Mem. 8.) City defendants argue that the Court should dismiss plaintiff's malicious prosecution claim because: 1) City defendants had probable cause to arrest and

11

prosecute plaintiff, and 2) qualified immunity shields the officers from liability. The Court disagrees.

### i.    Sufficiency of Malicious Prosecution Claim

The Court first concludes that plaintiff adequately alleges a malicious prosecution claim. To state a malicious prosecution claim under § 1983, plaintiff must aver facts showing that: "(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003) (citing *Donahue v. Gavin*, 280 F.3d 371, 379 (3d Cir. 2002)).

City defendants dispute only the third element of plaintiff's malicious prosecution claim — whether the proceeding was initiated without probable cause. Plaintiff's allegations, taken as true, demonstrate that City defendants initiated the criminal proceedings against plaintiff without probable cause.[12]  Plaintiff avers that he was arrested and subsequently prosecuted based on falsified videotape evidence. (*Id.* ¶¶ 52–53.) In other words, plaintiff alleges that City defendants manufactured the probable cause that was the basis for his prosecution. *See Mobilio v. Dep't of*

---

[12] Although City defendants argue that the police had probable cause to arrest plaintiff because he "pulled his shirt up to expose his firearm, and then pulled his weapon and aimed toward [an individual]," plaintiff does not assert those facts were even known or communicated to City defendants prior to his prosecution. (Defs.' Mot. J. Pl. 8) (quoting Compl. ¶ 37.) Thus, City defendants have failed to demonstrate that they had probable cause to arrest plaintiff based on the allegations on the Complaint.  City defendants may reassert this argument after discovery is completed, if warranted by the facts and applicable law.

*Law & Pub. Safety of New Jersey*, No. 07-3945, 2008 WL 2704826, at *4 (D.N.J. July 7, 2008) (malicious prosecution claim survived motion to dismiss where plaintiff alleged that there was no probable cause because evidence was fabricated); *Diaz–Colon v. Toledo–Davila*, 922 F.Supp.2d 189, 207 (D.P.R. 2013) (denying motion to dismiss malicious prosecution claim which alleged that "prosecutors ... fabricated evidence before any of the plaintiffs in this case were arrested").

### ii.    Qualified Immunity Defense

The Court rejects City defendants' argument that they are entitled to qualified immunity at this stage of the proceedings. Plaintiff alleges that City defendants manufactured probable cause to arrest and prosecute plaintiff by lying about videotape evidence that never existed. (*Id.* ¶¶ 52-53.) No officer could reasonably believe that such conduct is lawful. *See Mobilio*, 2008 WL 2704826, at *5 (rejecting City defendants' qualified immunity defense because "although the allegations that Detective Long fabricated incriminating evidence...may ultimately be proved false, no public official could reasonably believe that this type of conduct is lawful"); *see also Gaymon v. Borough of Collingdale*, No. 14-5454, 2015 WL 4389585, at *10 (E.D. Pa. 2015) (rejecting defendant's qualified immunity defense at the motion to dismiss phase where no reasonable officer could claim that the officers' wrongful conduct constituted lawful police action). Thus, the Motion is denied as to this claim. The denial is without prejudice to City defendants' right to assert the claim after completion of discovery, if warranted by the facts and applicable law. *See Underwood v. Commonwealth of Pa.*, No. 05-3452, 2006 WL 1147263, at *6 (E.D. Pa. 2006) (rejecting qualified immunity defense at the motion to dismiss stage based on

allegations that police officer lacked probable cause to arrest plaintiff, but permitted City defendants to invoke defense after discovery was conducted).

### C. Count III: Conspiracy

Plaintiff avers that City defendants conspired to deprive him of his Fourth Amendment right to be free from unlawful arrest and malicious prosecution. (Compl. ¶ 95.) The Court addresses each claim in turn.

#### a. Count III: Conspiracy Concerning False Arrest

City defendants argue that the Court should dismiss plaintiff's conspiracy claim based on false arrest because the claim is barred under the statute of limitations. The Court agrees.

A § 1983 conspiracy claim is subject to a two-year limitations period. *Kost v. Kozakiewicz,* 1 F.3d 176, 191 (3d Cir. 1993). "The limitations period begins to accrue in a § 1983 civil conspiracy claim on the date of each overt act causing injury to the plaintiffs." *Wilson v. Bd. of Control of City of Harrisburg Sch. Dist.,* No.10-0353, 2010 WL 4977056, at *5 (M.D. Pa. 2010) (citing *Kost v. Kozakiewicz,* 1 F.3d 176, 190–91 (3d Cir. 1993)). Since the alleged overt acts occurred on the day of plaintiff's arrest, January 5, 2013, the statute of limitations expired on January 5, 2015. (Pl. Mem. 11.) As plaintiff filed his Complaint on February 4, 2015, his conspiracy claim based on his alleged false arrest is time-barred.

14

**b.  Count III: Conspiracy Concerning Malicious Prosecution**

City defendants further argue that plaintiff does not adequately plead a §1983 conspiracy claim.[13] The Court disagrees.

"In order to prevail on a conspiracy claim under § 1983, a plaintiff must prove that persons acting under color of state law conspired to deprive him of a federal protected right." *Ashton v. City of Uniontown*, 459 F. App'x 185, 190 (3d Cir. 2012) (internal quotation omitted). "Plaintiff must plead sufficient facts to infer an agreement to act or concerted activity by the defendants alleged to have engaged in the conspiracy." *Lee v. Abellos*, No. 13-0486, 2014 WL 6987414, at *19 (E.D. Pa. 2014) (citation omitted).

The Court concludes that the Complaint avers sufficient facts to infer that City defendants entered into an agreement to maliciously prosecute plaintiff.  Plaintiff asserts that on the day of his arrest, defendants Palmer, Bryant, and McGeever arrived at the scene and shook hands and laughed with defendants Poulos and Reitano, who allegedly assaulted plaintiff. (Compl. ¶¶ 43, 45, 48.) Plaintiff further asserts that several City and non-City defendants remained in the trailer "for a while" and, upon exiting the trailer, arrested plaintiff based on allegedly fabricated videotape evidence, which formed the basis of the subsequent prosecution against him. (*Id.* ¶¶ 49-56.) Furthermore, plaintiff avers that City defendants failed to conduct any additional investigation despite the fact that it was plaintiff's wife, rather than non-City defendants, who had called the police initially. (*Id.* ¶¶ 41, 55–56.) Moreover, after defendants Palmer, Bryant, and McGeever arrested plaintiff, defendant Dawson allegedly informed plaintiff

---

[13] City defendants also argue that plaintiff's conspiracy claim fails because plaintiff has failed to allege an underlying § 1983 claim. (Def. Mem. 11.) The Court rejects this argument because, as discussed *supra*, plaintiff has adequately plead a malicious prosecution claim under §1983.

that "he did not think [plaintiff] should be charged with anything, but was going to charge him anyway because he had been ordered by 'the sergeant' to do so." (*Id.* ¶ 64.) Finally, plaintiff avers that as the charges against him proceeded through the court system, City defendants failed to produce the videotape or testify in court.[14] (*Id.* ¶¶ 73-74, 76.)

Taking the facts in the light most favorable to plaintiff, one can infer that City defendants entered into an agreement to maliciously prosecute plaintiff. *See Marchese v. Umstead*, 110 F. Supp. 2d 361, 371 (E.D. Pa. 2000) (denying defendant's motion to dismiss plaintiff's § 1983 conspiracy claim because "plaintiff has pled facts sufficient to put the defendants on notice of the general period of the conspiracy, the object of the conspiracy and the alleged conduct taken in furtherance of the conspiracy").

### D. Count IV: Municipal Liability

Plaintiff alleges that the City of Philadelphia's official policy not to investigate certain criminal complaints and failure to train its employees caused the deprivation of his Fourth Amendment rights. (Pl. Mem. 5-6.) City defendants argue that plaintiff has failed to plead sufficient facts to establish *Monell* liability. The Court disagrees.

#### 1. Count IV: *Monell* Claim Based on the City of Philadelphia's Official Policy Not to Investigate Certain Criminal Complaints

Municipalities such as the City of Philadelphia are "persons" who may be liable under § 1983. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 (1978). To establish municipal liability under *Monell*, plaintiff must "identify the challenged policy, [or custom,] attribute it to

---

[14] As these alleged overt acts in furtherance of the conspiracy occurred on May 13, 2013 and plaintiff filed his Complaint on February 4, 2015, plaintiff's conspiracy claim concerning malicious prosecution is not barred by the two-year statute of limitations. (Compl. ¶ 76.)

the [municipality] itself, and show a causal link between execution of the policy, [or custom] and

the injury suffered." *Demeter v. City of Bethlehem*, No. 03-6825, 2004 WL 1166572, at *4 (E.D.

Pa. May 20, 2004) (citing *Losch v. Borough of Parkesburg*, 736 F.2d 903, 910 (3d Cir. 1984)).

At this stage, plaintiff "is [not] obligated to plead with special particularity the exact policies and

practices that were in place, prior to taking any discovery into [the alleged] policies, and explain

exactly how these precisely alleged policies caused or contributed to [plaintiff's] injuries."

*Kenney v. Montgomery Cnty.*, No. 13-2590, 2013 WL 5356862, at *7 (DuBois, J.) (E.D. Pa.

2013).

The Court concludes that plaintiff sufficiently alleges a *Monell* claim based on an official

City policy. First, plaintiff identifies the challenged policy as the City of Philadelphia's "official

policy not to investigate…complaints concerning criminal conduct by individuals who are

friends, relatives, or business associates of police officers." (Compl. ¶ 97.) Furthermore, plaintiff

avers that the City of Philadelphia's official policy caused his injury — the deprivation of his

Fourth Amendment rights. (*Id.* ¶¶ 92, 97.) Thus, plaintiff's *Monell* claim based on the City of

Philadelphia's alleged official policy is allowed to proceed.

### 2. Count IV: *Monell* Claim Based on the City of Philadelphia's Failure to Train

Liability can also be imposed on a municipal entity where the alleged policy or practice

"concerns a failure to train or supervise municipal employees" by showing "that the failure

amounts to 'deliberate indifference' to the rights of persons with whom those employees will

come into contact." *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999) (quoting *City of

Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)). "A pattern of similar constitutional

violations by untrained [or unsupervised] employees is 'ordinarily necessary' to demonstrate

deliberate indifference," although such a pattern may not be necessary where the consequences of the training or supervision failure are "highly predictable." *Connick v. Thompson*, 131 S. Ct. 1350, 1360 (2011) (citing *Brown*, 520 U.S. at 409).

Plaintiff sufficiently pleads a failure to train claim under *Monell*. First, plaintiff adequately alleges a deficiency: namely, that the City of Philadelphia "has been deliberately indifferent to the…need for more training [concerning police officers'] use of their status as police officers to initiate unlawful arrests [and] malicious prosecutions." (Compl. ¶¶ 98, 98B); *see Hall v. Raech*, No. 08–5020, 2009 WL 811503, at *5 (E.D. Pa. 2009) (Plaintiff adequately plead training deficiency where he alleged that "City defendants failed 'to train … officers to distinguish between criminal activity and medical emergencies.'"). Next, plaintiff avers that the City of Philadelphia's failure to train its employees caused the alleged violations of plaintiff's Fourth Amendment rights. (Compl.¶¶ 98, 93.)

Finally, while the Complaint does not allege a pattern of similar constitutional violations resulting from the alleged training deficiency, the Court declines to dismiss plaintiff's *Monell* claim on this ground because "[plaintiff] cannot…prove such a pattern without a sufficient period of discovery to adduce this evidence." *See Ford v. City of Philadelphia*, No. 12-2160, 2012 WL 3030161, at *7 (E.D. Pa. 2012); *see also Keahey v. Bethel Twp.*, No. 11–7210, 2012 WL 478936, at *10 (E.D. Pa. 2012) (declining to dismiss plaintiff's claim that "the Township failed to 'properly train, supervise and discipline' its police officers, thereby causing the alleged deprivation of his constitutional rights" because plaintiff had not yet had the opportunity to conduct discovery to determine whether there was a pattern of similar constitutional violations).

Thus, City defendants' Motion is denied to the extent it seeks dismissal of Count IV.

### E. Count VI: Equitable Relief under State Law (Expungement)

In Count VI of the Complaint, plaintiff asks the Court to order the expungement of his state court criminal records. (Compl. ¶ 103.) The Court concludes that it does not have jurisdiction to expunge plaintiff's criminal records.[15]

A district court does not have inherent jurisdiction over motions to expunge. *United States v. Dunegan*, 251 F.3d 477, 478-79 (3d Cir. 2001). However, a court has "[ancillary] jurisdiction over petitions for expungement in narrow circumstances: [including] where the validity of the underlying criminal proceeding is challenged." *United States v. Rowlands,* 451 F.3d 173, 177 (3d Cir. 2006).

Although there is no Third Circuit authority on the issue, courts have generally concluded that a federal court's ancillary jurisdiction does not extend to the expungement of state court criminal records. *See Dennis v. Nat'l Railroad Passenger Corp.,* 34 F. App'x. 950, 950 (4th Cir. 2002) (unpublished) ("Expungement of a state criminal record must be sought through the state court system."); *Belill v. Hummel,* No. 86-1937, 1987 WL 24114, at *5 (6th Cir. 1987) (unpublished) (holding that federalism and comity principles prohibited the district court from ordering that the plaintiff's state criminal record be expunged); *Wallace v. Poulos,* 861 F. Supp. 2d 587, 598 (D. Md. 2012) ("Because Plaintiffs seek expungement of a state arrest record and Maryland provides a procedure for expungement in its state courts, Plaintiffs' request for equitable relief will be denied."); *Linares v. Barkley,* No. 9:09-1191, 2010 WL 4962998, at *3

---

[15] Pennsylvania Rule of Criminal Procedure 790, "Procedure for Obtaining Expungement in Court Cases; Expungement Order," outlines a specific process that persons may use to expunge their criminal court records, pursuant to 35 Pa. Cons. Stat. Ann. § 780-119 (West).

(N.D.N.Y. Oct. 8, 2010) ("It is simply not within this Court's province nor authority . . . to order the Appellate Division to expunge its records."), report and recommendation adopted, No. 09-1191, 2010 WL 4955854 (N.D.N.Y. Dec. 1, 2010).

Thus, City defendants' Motion is granted with respect to Count VI and plaintiff's claim for equitable relief is denied.

### F.  Count VII: Suspension in Violation of Due Process Clause

Plaintiff avers that the City of Philadelphia suspended him from employment without due process of the law. At the outset, the Court notes that parties brief Count VII only as a *Monell* claim. However, based on the allegations in the Complaint, the Court construes Count VII as a procedural due process claim and a *Monell* claim.

The Court concludes that plaintiff has alleged sufficient facts, taken as true, to state a due process claim.  A plaintiff seeking to establish a procedural due process claim must show that "(1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him do not provide 'due process of law.'" *Biliski v. Red Clay Consol. Sch. Dist. Bd. of Educ.*, 574 F.3d 214, 219 (3d Cir. 2009) (internal quotations omitted). An individual's opportunity for a hearing is a core requirement of the Due Process Clause. *See Andrekovich v. Chenoga*, No. 2:11CV1364, 2012 WL 3231022, at *5 (W.D. Pa. 2012) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542, (1985)).

First, plaintiff has a property interest in his employment with the City of Philadelphia. *See Dee v. Borough of Dunmore*, 549 F.3d 225, 230 (3d Cir. 2008) (concluding that a municipal employee has a property interest in his employment). Furthermore, plaintiff avers that he "was

not afforded a hearing before any City body, most specifically his warden, and/or the

Philadelphia Prison System Disciplinary Board." (Compl. ¶¶ 80, 85). As an opportunity for a

hearing is a core requirement of the Due Process Clause, plaintiff sufficiently states a due

process claim. *See Banerjee v. Temple Univ. of Com. Sys. of Higher Educ.*, No. 96-1733, 1996

WL 479662, at *1 (E.D. Pa. 1996) (declining to dismiss plaintiff's due process claim as she

sufficiently alleged that she had a property interest in her employment and received no hearing

before being terminated).

　　The Court further concludes that plaintiff has adequately stated a *Monell* claim in Count

VII, based on the City of Philadelphia's alleged official policy.  First, plaintiff identifies the

challenged policy as the Prison System's policy of "suspend[ing] and/or terminat[ing] employees

upon arrest...and denying them pay and emoluments of office without due process of the law."

(Compl. ¶¶ 85, 97-98A.) Next, plaintiff attributes the policy to the City of Philadelphia by

averring that "the City of Philadelphia act[s] through its Prison System to suspend and/or

terminate employees upon arrest...without due process of law." (*Id.* ¶ 98A.) Finally, plaintiff

alleges that the execution of the policy deprived him of his due process rights. (Compl. ¶¶ 85,

97-98.)

　　Thus, City defendants' Motion is denied, to the extent it seeks dismissal of Count VII.

**V.　CONCLUSION**

　　For the foregoing reasons, the Court grants in part and denies in part City defendants'

Motion for Judgement on the Pleadings. The Motion is granted as follows:

- Count I is dismissed with prejudice to the extent it: 1) alleges that the City of Philadelphia and defendant officers in their official capacities committed conversion; and 2) alleges that defendant officers in their individual capacities committed conversion by taking plaintiff's firearm on the day of his arrest;

- Plaintiff's false arrest claim in Count II is dismissed with prejudice;

- Count III is dismissed with prejudice to the extent it alleges that City defendants conspired to falsely arrest plaintiff; and

- Count VI is dismissed with prejudice;

City defendants' Motion for Judgment on the Pleadings is denied in all other respects.

The claims remaining for adjudication are as follows:

- Count I with respect to defendant officers in their individual capacities to the extent it alleges they failed to return plaintiff's firearm after his acquittal on May 13, 2013;

- Count II with respect to malicious prosecution;

- Count III to the extent it alleges that City defendants conspired to maliciously prosecute plaintiff;

- Counts IV, V, and VII in their entirety.

An appropriate order follows.